UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA MOE,

    Plaintiff,

v.                                                                                                            Hon. Sally J. Berens

COMMISSIONER OF                                                                        Case No. 1:20-cv-896
SOCIAL SECURITY,

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **reverse** the Commissioner's decision and **remand** the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

### Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards in making his decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed an application for DIB on March 20, 2018, alleging that she became disabled as of March 12, 2018, due to rheumatoid arthritis and supraventricular tachycardia. (PageID.93–94, 167–68.) Plaintiff was age 26 at the time of her alleged onset date. (PageID.93) She had

completed the tenth grade and had previous employment as a hotel desk clerk. (PageID.202.) After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge (ALJ). Plaintiff later amended her alleged onset date to April 1, 2017. (PageID.184.)

ALJ Kevin Himebaugh conducted a hearing on September 12, 2019, and received testimony from Plaintiff and Susan Rowe, an impartial vocational expert. (PageID.60–91.) On September 26, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled from her amended alleged onset date through the date of the decision. (PageID.46–55.) The Appeals Council denied Plaintiff's request for review on July 13, 2020 (PageID.35–37), making ALJ Himebaugh's September 26, 2019 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on September 15, 2020.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff met the insured status requirements of the Act through September 30, 2020, and had not engaged in substantial gainful activity since her amended alleged onset date, the ALJ found that Plaintiff suffered from the severe impairment of rheumatoid arthritis. (PageID.48.) The ALJ found that Plaintiff's supraventricular tachycardia was nonsevere. (PageID.49.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ considered Plaintiff's rheumatoid arthritis under listing 14.09 (Inflammatory Arthritis). (PageID.49.)

With respect to Plaintiff's RFC, the ALJ determined that she retained the capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she:

>can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently as opposed to continuously reach, push, pull, handle and finger. She cannot have concentrated exposure to extreme cold, humidity, or vibration, and no exposure to unprotected height or dangerous machinery. The claimant must be allowed to stand up to five minutes every hour, without leaving the workstation.

(PageID.49.)

At step four, the ALJ determined that Plaintiff is unable to perform her past relevant work as a hotel desk clerk. (PageID.53–54.) At step five, however, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of document preparer, order clerk, and inspector, 135,000 of which existed in the national economy. (PageID.54–55.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises two issues in her appeal: (1) substantial evidence does not support the ALJ's decision to discount Plaintiff's subjective symptoms caused by her rheumatoid arthritis; and (2) the ALJ's assessment of the opinions of Plaintiff's treating rheumatologist is not supported by substantial evidence. (ECF No. 15 at PageID.326.)

### I. Evaluation of Subjective Symptoms

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). As explained in *Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL

5

4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

*Id.* at *6.

Consistent with prior ruling SSR 96-7p, *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* The Sixth Circuit has said that such findings "may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted). However, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations

as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248.

Plaintiff argues that the ALJ's assessment of her subjective symptoms lacked substantial evidence for several reasons. She first contends that the ALJ erred by overemphasizing the most recent medical evidence to the exclusion of evidence from earlier in the period at issue, which indicated that her rheumatoid arthritis was uncontrolled or partially controlled. (ECF No. 15 at PageID.339–40.) The medical record pertaining to Plaintiff's rheumatoid arthritis was fairly limited, consisting mainly of treatment records of eight visits over two years with Aaron Eggebeen, M.D., her treating rheumatologist. At each visit, Plaintiff completed the Stanford Health Assessment Questionnaire II Disability Index, a series of questions designed to gauge the functional status of patients with rheumatic diseases. A patient's answers produce a patient global assessment (PtGA). The physician also records his own assessment, called the MD global assessment (MDGA). Dr. Eggebeen also performed a physical exam that assessed 28 joints for swelling and tenderness, recorded separately as the Swollen Joint Count (SJC) and the Tender Joint Count (TJC). He then used all four scores (PtGA, MDGA, SJC, and TJC) to calculate the Clinical Disease Activity Index (CDAI), a score used to evaluate the severity of the impairment and its change over time by ranking the disease as in remission or low, moderate, or high activity. (PageID.251–52, 254–55, 257–58, 279–84, 288–89.)

Plaintiff saw Dr. Eggebeen on February 21, 2017, prior to her amended alleged onset date. At this visit, she reported that her overall status was worse, and she had persistent pain or problems with both elbows and feet, but her pain was acceptably controlled. The doctor assessed partially controlled moderate arthritis. (PageID.257–58.) When Plaintiff next saw Dr. Eggebeen, in August 2017, she reported feeling much worse with more joint swelling, and her pain was not acceptably

controlled. Plaintiff switched to Enbrel for two months after her insurance did not approve her previous medicine, but her symptoms progressively worsened while on Enbrel. She reported persistent issues with multiple joints. The doctor assessed Plaintiff with very active, uncontrolled arthritis. (PageID.254–55.) On December 18, 2017, Plaintiff reported that she "felt great" and had been "doing well" after the first two infusions of Infliximab (Remicade), but her joints were swollen after working four days in a row. Plaintiff said that her pain was not acceptably controlled. She reported persistent issues with multiple joints. The doctor assessed partially controlled arthritis at a moderate activity level. (PageID.251–52.) On March 26, 2018, Plaintiff reported not doing "as well." She had felt much better after initial loading of Remicade, but her symptoms began to worsen. Plaintiff said that her overall status was worse, and her pain was not acceptably controlled. She again reported persistent issues with multiple joints. (PageID.246–47.) On October 4, 2018, Plaintiff said that she had switched from Actrema to Rituxan because of an insurance denial and reported that the pressure in her joints was better following the second dose, although she still had "bad active joint swelling." Plaintiff reported that her overall status was better, but that her pain was not acceptably controlled. She reported persistent issues in multiple joints. Dr. Eggebeen assessed partially controlled arthritis at a moderate level. (PageID.281.) On January 16, 2019, Plaintiff reported that Rituxan had improved the degree of her arthritis. Although she still had swollen joints, she was "50% better from her prior status." Plaintiff reported that the pain still was not acceptably controlled. Dr. Eggebeen assessed moderate arthritis, but about 50% improved after the first cycle of Rituxan. (PageID.279.) On August 15, 2019, Plaintiff reported that Rituxan had helped "at least 50%," although she still had ongoing symptoms. She said that the overall status was about the same but that her pain was acceptably controlled. The doctor assessed partially controlled arthritis at a moderate level. (PageID.288–89.)

In addition to discussing the March 2018 treatment note, the ALJ discussed later records as follows:

> The claimant has tried several different medications prescribed by her rheumatologist, Aaaron [sic] Eggebeen, M.D. When she reported feeling worse with Remicade, she was switched to Rituxan. By October 2018, she reported the pressure in her joints was better, but still had active joint swelling (Exhibit 3F/3). By January 2019, the claimant reported improvement with the Rituxan, and while she still experienced swollen joints, shew as [sic] about 50% better than her prior status (Exhibit 3F). During an August 2019 follow up with Dr. Eggebeen, the claimant again reported 50% improvement with Rituxan and while she reported ongoing symptoms, she noted she had run out of Prednisone (Exhibit 5F). Dr. Eggebeen noted the joints with persistent problems included the right elbow, both hands, left ankle, and both hips. The claimant described her overall status is about the same, experiences morning stiffness for about an hour, but her pain is acceptably controlled (Exhibit 5F).

(PageID.50–51.) From this summary, the ALJ concluded that "the more recent medical evidence suggests that the claimant's symptoms have been well controlled with consistent treatment and taking medications as prescribed." (PageID.52.)

Contrary to Plaintiff's assertion, the ALJ did not overemphasize the more recent treatment records. Although the ALJ was not required to discuss every piece of evidence in the administrative record, his discussion indicates that he considered the record as a whole. *See Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion"); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (quoting *Loral Defense Sys. - Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). In addition, the ALJ's observation about the more recent medical evidence was reasonable, notwithstanding Dr. Eggebeen's generally consistent assessments that Plaintiff's symptoms were "partially controlled." The medical record supports this conclusion. For example, at the October 2018 visit, out of 28 joints, Dr. Eggebeen

9

noted 12 swollen and two tender. (PageID.281.) At the January 2019 visit, he noted six swollen and two tender joints. (PageID.279.) And at the August 2019 visit, at which Plaintiff reported acceptable pain control, he noted five swollen and no tender joints. (PageID.288.) Finally, despite Plaintiff's reading of the ALJ's opinion, nothing therein suggests that he found that Plaintiff had been noncompliant with her medications.

Plaintiff also contends that the ALJ erred by making unsupported medical findings regarding the extent of Plaintiff's treatment. In evaluating a claimant's symptoms, an ALJ may properly consider the treatment a claimant has received to alleviate those symptoms. 20 C.F.R. § 404.1529(c)(3)(v); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016) (ALJ properly considered that the claimant "received only routine and/or conservative treatment for the allegedly disabling impairments"). Regarding this consideration, the ALJ accurately noted that "the record reflects only routine follow up appointments without the need for emergent crisis treatment or more the [sic] routine conservative care." (PageID.52.) Plaintiff objects that she was not required to demonstrate death or a comatose state to support disability (ECF No. 15 at PageID.341), but the ALJ's observation still holds. Plaintiff had only seen Dr. Eggebeen for routine appointments, had not received intravenous steroids or joint injections, and there was no lung or eye involvement. (PageID.50.) Plaintiff cites no contrary evidence indicating anything more than conservative treatment.

Finally, Plaintiff contends that the ALJ overstated her daily activities because he ignored her statements in her Function Report limiting the scope of those activities. The ALJ found that Plaintiff's reported activities, including driving, grocery shopping, caring for her son, spending time with friends, caring for family pets, and working part time were not fully consistent with her

10

alleged disabling symptoms.[2] (PageID.52.) Plaintiff notes, for example, that as to driving she said, "Some days im [sic] to [sic] sore but I do when I can" (PageID.211), and that as to shopping, she stated, "Not often. And it has to be quick when I do." (ECF No. 15 at PageID.341–42.) She asserts that the ALJ ignored that her actual level of activity is inconsistent with full-time work. However, the ALJ also recognized that because of Plaintiff's arthritis, "the scope and extent of these regular activities may change from day to day," but still found that her activities indicated that she was more capable of work activity than she alleged. (PageID.52.) The ALJ also recognized Plaintiff's reported limitations, as well as her hearing testimony, in assessing Plaintiff's complaints of disabling symptoms. (PageID.50–51.) In the end, he concluded that her allegations were not fully consistent with the evidence of record, as he was entitled to do. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record.") (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987)).

---

[2] The parties dispute whether Plaintiff worked following her amended alleged onset date. Although Plaintiff concedes that she worked part time after that date, she denies that it can be considered work because the ALJ found that it was an unsuccessful work attempt under 20 C.F.R. § 404.1574(a)(1). (ECF No. 15 at PageID.342.) Defendant responds that Plaintiff admitted in her administrative forms that she worked as a hotel front-desk clerk 24 hours per week until May 2018, and she further notes that Plaintiff told Dr. Eggebeen that she worked part-time cleaning houses during the relevant period. (ECF No. 18 at PageID.363–64.) Plaintiff explains that while she did clean houses at one point, that employment ended in the second quarter of 2017, and the reference to house cleaning erroneously carried forward in her treatment notes. (ECF No. 19 at PageID.375 (citing PageID.175–76, 179, 202).) The records bear this out. In any event, it is clear that Plaintiff actually worked part-time through approximately May 2018, and the ALJ was entitled to consider this fact in assessing Plaintiff's subjective symptoms. *See Fields v. Comm'r of Soc. Sec.*, No. 15-13895, 2017 WL 1214342, at *7 (E.D. Mich. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1190949 (E.D. Mich. Mar. 31, 2017) (finding that notwithstanding the ALJ's determination that the claimant's work constituted an "unsuccessful work attempt," her work was still relevant to the ALJ's credibility analysis); *Vires v. Berryhill*, No. 16-349, 2017 WL 3668430, at *4 (E.D. Ky. Aug. 24, 2017) ("Plaintiff's unsuccessful work attempt was used to neither prove nor disprove her claim of disability, but to evaluate her credibility.").

In sum, the ALJ's assessment was supported by substantial evidence. Therefore, this argument is rejected.

## II. Evaluation of Opinion Evidence

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 404.1520c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 404.1520c(1)–(5). The ALJ must explain his or her consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* §§ 404.l520c(b)(2), (3) 416.920c(b)(2), (3). The regulation defines "supportability" and "consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(1)–(2). The ALJ is to conduct this analysis with regard to all opinions, but is not required to give controlling weight to an opinion from any particular source.

Dr. Eggebeen submitted two treating source statements, which, the ALJ evaluated as follows:

> In July 2019, Dr. Eggebeen completed a medical source statement and opined the claimant can sit at least six hours, stand and/or walk less than two hours, but needs a sit/stand option. Dr. Eggebeen added the claimant can barely lift/carry up to 20 pounds, never 50 pounds, and rarely handle, finger, reach, bend/stoop. Dr. Eggebeen also opined the claimant's symptoms would be severe enough to frequently interfere with attention and concentration, and she will require 1 to 2 unscheduled work breaks for 10 to 15 minutes due to pain. She will experience good/bad days, and will be absent more than four days per month due to pain (Exhibit 4F). In September 2018, Dr. Eggebeen provided a statement indicating he had been treating the claimant since 2014 for her rheumatoid arthritis, swollen joints, joint pain, and joint contractures. While she has tried several medications, she has ongoing moderate to severe active rheumatoid arthritis affecting her on a daily basis. Dr. Eggebeen opined it does not appear she is capable of even sedentary work at this time (Exhibit 9F). While Dr. Eggebeen is a treating provider, his opinion is not fully persuasive. He indicates a sit/stand option, but does not define how often. He also does not provide a rationale for the frequency of absenteeism or what constitutes a good day or bad day. In addition, his opinions are not supported by the record including the claimant's statements that she "felt great" or 50% better than the prior presentation, and that "pain is acceptably controlled" (Exhibit 1F/6; 5F). Finally, Dr. Eggebeen's opinion that the claimant is not even capable of sedentary work is an opinion reserved for the Commissioner especially given Dr. Eggebeen does not define what constitutes sedentary work. Accordingly, I do not find Dr. Eggebeen's opinions persuasive.

(PageID.53.) Plaintiff contends that the ALJ's evaluation of Dr. Eggebeen's opinions that Plaintiff would be absent from work for more than four days per month and that Plaintiff could use her hands and fingers only rarely is not supported by substantial evidence.

First, regarding the opinion about Plaintiff's likely absenteeism, Plaintiff contends that, contrary to the ALJ's reasoning, Dr. Eggebeen did provide a rationale for his opinion. She points to Dr. Eggebeen's statement on the form that Plaintiff has chronic active rheumatoid arthritis and has continued joint pain and swelling, despite treatment with several medications. (ECF No. 15 at PageID.352.) The particular question on the form concerning absenteeism asked the provider whether the patient would experience "good days" and "bad days," and if so, how often she would likely miss work. It also asked the provider to indicate the symptom most likely to cause the absence. Dr. Eggebeen checked "Yes" to "good days" and "bad days", checked more than four days per month, and checked "pain" as the symptom that would cause her to miss work.

13

(PageID.286.) The ALJ properly found these opinions unsupported. ALJs are not bound by conclusory statements of doctors on check-box forms without explanations citing detailed objective criteria and documentation. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) (internal quotation marks omitted). The statement Plaintiff cites dealt with a separate issue regarding limitations on Plaintiff's work activities and was not responsive to the question about absenteeism. (PageID.285–86.) Plaintiff also contends that the ALJ failed to consider the consistency of the opinion with other evidence regarding her potential absenteeism. But Plaintiff's answers to the Stanford questionnaire and her CDAI scores are not necessarily indicative of absenteeism. Plaintiff also points to the consultative examiner's observation that "fatigue will be a factor" (PageID.51, 272), but Dr. Eggebeen did not identify fatigue as a cause of the opined absences. (PageID.286.) Finally, Plaintiff takes issue with the ALJ's finding that her statements that she "felt great," was "50% better than the prior presentation," and had acceptable pain control, do not support Dr. Eggebeen's opinions. The Court agrees with Plaintiff that ALJ took her "felt great" comment from the December 2017 visit out of context. (PageID.251.) The other two statements, however, are accurate, and although Plaintiff made them in the last year of the period at issue, the ALJ nonetheless properly cited them as contrary to Dr. Eggebeen's opinions.

Next, Plaintiff argues that the ALJ failed to discuss, or improperly rejected, Dr. Eggebeen's opinion about hand use. The ALJ acknowledged his opinion that Plaintiff could rarely handle and finger, but did not explicitly address why he found it not persuasive. Plaintiff contends that Dr.

14

Eggebeen articulated his bases for this opinion by identifying positive objective signs and noting continuing joint pain and swelling. Plaintiff also argues that Dr. Eggebeen's office notes, which always documented swollen and tender joints in Plaintiff's hands, further support his opinion. Finally, Plaintiff argues that Dr. Eggebeen's opinion about hand use was consistent with consultative examiner June Hillelson, D.O.'s report, which found Plaintiff's hands tender and swollen on examination; noted a reduced range of motion in the hands and fingers; found that Plaintiff would have limitations buttoning clothes, tying shoes, getting dressed, opening doors, picking up coins, and writing; and stated that, "With her hands, she might avoid gripping, grasping, and twisting." (ECF No. 15 at PageID.345 (citing PageID.271–72.)

Defendant responds that Dr. Hillelson's examination documented the most extensive medical findings regarding Plaintiff's hands, and the ALJ found that opinion persuasive and consistent with the evidence as a whole, including Plaintiff's daily activities. Defendant further contends that Dr. Eggebeen's treatment notes generally reflected Plaintiff's subjective complaints, and contrary to Plaintiff's assertion, showed positive findings of the hands on only one occasion, during the October 2018 visit. Defendant also points out that Dr. Eggebeen did not give Plaintiff limitations on the use of her hands when she reported swelling after working four days in a row in December 2017, and he and made no positive findings at that time. Finally, Defendant argues that Dr. Eggebeen failed to adequately explain his reasoning for rare use of the hands and fingers, as his opinion is on a checkbox form with no specific explanation those opinions. (ECF No. 18 at PageID.368–69.)

Although the question is close, particularly because the vocational expert testified that limitations of less than occasional handling and fingering would be work preclusive (PageID.89), the Court concludes that a remand is warranted for the ALJ to articulate his specific reasons for

15

evaluating Dr. Eggebeen's opinion regarding hand and finger usage. Certainly, Defendant put forth a number of reasons why the ALJ might find this opinion unpersuasive, but it is for the ALJ, and not the Commissioner or her counsel on appeal, to evaluate the opinion.

Accordingly, the Court will remand this case to allow the ALJ to properly evaluate this aspect of Dr. Eggebeen's opinion.

## Conclusion

For the reasons stated above, the Commissioner's decision is **reversed and remanded** for further factual findings consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g).

An order consistent with this opinion will enter.

Dated: March 30, 2022　　　　　　　　　　　　　　　　/s/ Sally J. Berens  
　　　　　　　　　　　　　　　　　　　　　　　　　　SALLY J. BERENS  
　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge